UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DAKOTA LINTZ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:21-cv-00113-JRS-MKK ) |
| SIMS, SARA CLARKE, | ) ) ) ) |
| Defendants. | ) |

**Order Granting Motion for Summary Judgment and
Directing Entry of Final Judgment**

Dakota Lintz, an inmate at Wabash Valley Correctional Facility, brings this lawsuit alleging deliberate indifference to his serious mental health needs. The defendants, Dr. Mary Sims and counselor Sarah Clarke, have moved for summary judgment. As explained below, the evidence would not allow a reasonable jury to find in favor of Mr. Lintz. The motion for summary judgment is **GRANTED** and this lawsuit is now **DISMISSED**.

**I. Summary Judgment Standard**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v.*

*Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II. Factual Background

### A. Parties, Claims, and Defenses

Mr. Lintz was diagnosed with bipolar disorder when he was twelve and was prescribed medication for bipolar disorder until he was sixteen. Dkt. 30-4 at 3. He has not been diagnosed with bipolar disorder during his incarceration at the Indiana Department of Correction ("IDOC"). *Id.* at 8. In 2019, when Mr. Lintz was twenty-three, he was transferred to Wabash Valley Correctional Facility and is still incarcerated there today. *Id.*

Dr. Mary Sims, Ph.D., HSPP, is a psychologist licensed to practice in Indiana and employed at Wabash Valley. Dkt. 30-1 at ¶ 2. Sarah Clarke is a mental health counselor licensed to practice in Indiana and employed at Wabash Valley. Dkt. 30-2 at ¶ 2.

Mr. Lintz alleges that Dr. Sims and Ms. Clarke failed to treat him for bipolar disorder at Wabash Valley in violation of the Eighth Amendment.[1] Dkt. 1.

The defendants argue that they did not treat Mr. Lintz for bipolar disorder because he has not been diagnosed with bipolar disorder at IDOC and does not display symptoms of bipolar disorder. *See* dkt. 29; dkt. 30-1 at ¶ 9 (Sims affidavit) ("I have never diagnosed Mr. Lintz with bipolar disorder, have seen no evidence that he suffers from bipolar disorder, and have not seen any medical records reflecting such a diagnosis"); dkt. 30-2 at ¶ 12, 13 (Clarke affidavit) ("As a mental health professional, I cannot make diagnoses or unilaterally make treatment decisions. I must do so in conjunction with a psychologist or psychiatrist. To my knowledge, no clinician at Wabash Valley Correctional Facility has diagnosed Mr. Lintz with bipolar disorder.").

### B. Chronology of Treatment at Wabash Valley

On March 2, 2020, Ms. Clarke met with Mr. Lintz in response to a Request for Health Care form to discuss his past history of mental illness and his lapse in treatment while incarcerated. Dkt. 30-2 at ¶ 6; dkt. 30-3 at 19. Mr. Lintz told Ms. Clarke about his history of sexual abuse, physical abuse, neglect, drug use, and behavioral problems. *Id.* He denied issues with sleep, reexperiencing trauma, daily functioning, and perception. *Id.* He reported pervasive and intrusive violent thoughts and a desire for control. *Id.*

Ms. Clarke did not believe that Mr. Lintz required a referral for medication or that he met the criteria for post-traumatic stress disorder. *Id.* She provided him with information about dialectical behavior therapy to cope with past traumas and encouraged him to work with the mental

---

[1] Mr. Lintz attempted to file an amended complaint without seeking the Court's permission as required by Federal Rule of Civil Procedure 15(a)(1) and the pretrial schedule. *See* dkt. 14 at 3 ("Any party who wants to amend its Complaint, Answer, or other pleading must file a motion for leave to amend with the proposed amended pleading attached."). Accordingly, the original complaint at docket entry no. 1 remains the operative complaint in this lawsuit.

health staff to reduce "Cluster B" personality traits.[2] Ms. Clark instructed Mr. Lintz to submit another Request for Health Care form in a month, after he had an opportunity to read these psychoeducation materials. *Id.*

On November 18, 2020, Ms. Clarke met with Mr. Lintz because he was engaging in a hunger strike to protest the cleanliness of the recreation pad and his housing unit. Dkt. 30-2 at ¶ 7; dkt. 30-3 at 17. Mr. Lintz was alert, oriented, and coherent during his conversation with Ms. Clarke. *Id.* He denied needing mental health services and did not report thought or behavior patterns that were out of touch with reality. *Id.* His hunger strike did not appear to impact his mental health and did not appear to be related to any mental health issues. *Id.*

On November 19, 2020, Dr. Sims met with Mr. Lintz in response to his hunger strike. Dkt. 30-1 at ¶ 6; dkt. 30-3 at 15. Mr. Lintz told Dr. Sims about his adolescent bipolar diagnosis, and she informed him that clinicians at Wabash Valley would have to make their own diagnosis of his mental illness, rather than relying on his account of an adolescent diagnosis. *Id.*

Mr. Lintz testified at his deposition that he asked Dr. Sims to review his adolescent psychiatric records to confirm his bipolar diagnosis. Dkt. 30-4 at 10. Mr. Lintz also testified that Dr. Sims told him these records would no longer be retained by his adolescent mental health provider because the records were more than seven years old. *Id.* Mr. Lintz believes that these records do exist, and that Dr. Sims and Ms. Clarke simply refused to request them, even though he

---

[2] Dialectical behavior therapy is a form of talk therapy for people who experience emotions very intensely. It is a common therapy for borderline personality disorder and other mental health conditions. https://my.clevelandclinic.org/health/treatments/22838-dialectical-behavior-therapy-dbt.

"Cluster B" is a category of personality disorders in the *Diagnostic and Statistical Manual of Mental Disorders-Fifth Edition*. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 648 (5th ed. 2013). "Individuals with these disorders often appear dramatic, emotional, or erratic." *Id.* Examples of "Cluster B" personality disorders include antisocial personality disorder, borderline personality disorder, histrionic personality disorder, and narcissistic personality disorder. *Id.*

signed two Release of Medical Information forms authorizing his adolescent mental health provider to release these records to the mental health staff at Wabash Valley. *Id.* at 13; dkt. 32-11.

On January 20, 2021, Ms. Clarke met with Mr. Lintz in response to a Request for Health Care form. Dkt. 30-2 at ¶ 8; dkt. 30-3 at 13-14. Mr. Lintz reported that he was depressed but could not describe what symptoms he was experiencing. *Id.* Ms. Clarke offered to provide psychoeducational materials on emotional intelligence and dialectical behavior therapy, which Mr. Lintz declined. *Id.* Ms. Clarke did not believe that Mr. Lintz displayed any symptoms of "Axis I" mental illness, but that he did show signs of narcissistic personality disorder when he discussed how "worksheets" would not help him because he is "more cognitive than these other guys."[3]

On July 2, 2021, Ms. Clarke met with Mr. Lintz, who reported feeling anxious. Dkt. 30-2 at ¶ 9; dkt. 30-3 at 7. Ms. Clarke provided Mr. Lintz with psychoeducation about how physical health and mental health are related, as the symptoms he expressed—racing heartbeat, poor sleep, and high blood pressure—could have been related to a panic attack or even cardiovascular illness. *Id.* Ms. Clarke offered to make a medical referral for Mr. Lintz to be seen for any potential medical issues. *Id.* When Ms. Clarke mentioned a medical referral, Mr. Lintz requested to end the session and stated that he no longer wanted to speak with her. *Id.*

On July 12, 2021, Ms. Clarke met with Mr. Lintz after he was placed on suicide watch for inflicting multiple cuts on his left forearm. Dkt. 30-2 at ¶ 10; dkt. 30-3 at 4. Mr. Lintz reported that

---

[3] The *Diagnostic and Statistical Manual of Mental Disorders-Fourth Edition* groups mental disorders into a "multiaxial system" of classification. Axis I disorders are termed "clinical disorders" and include major depressive disorder, bipolar affective disorder, schizophrenia, generalized anxiety disorder, panic disorder, and post-traumatic stress disorder. Axis II disorders are termed "personality disorders" and include antisocial personality disorder and narcissistic personality disorder. Axis II disorders also include intellectual disabilities. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, pp. 27-29 (4th ed. 2000).

5

he had harmed himself because he was having a hard time and was fed up. *Id.* He reported that he did not know if he was attempting to end his life, or if he engaged in self-harm out of general frustration. *Id.* He denied any further thoughts or plans to harm himself. *Id.*

On July 13, 2021, Ms. Clarke met with Mr. Lintz for another daily suicide monitoring visit. Dkt. 30-2 at ¶ 11; dkt. 30-3 at 1. Mr. Lintz denied any thoughts or plans to harm himself. *Id.* He reported that he was ready to return to his cell, and he was removed from suicide watch. *Id.*

Mr. Lintz testified that he attempted suicide four times between June 2021 and November 2021. Dkt. 30-4 at 9. Each time, he was placed on suicide watch and met with Ms. Clarke every two or three days. *Id.*

### III. Discussion

#### A. Deliberate Indifference Standard

Mr. Lintz asserts Eighth Amendment medical care claims against the defendants. At all times relevant to his claims, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "To determine if the Eighth Amendment has been violated in the prison medical context, [courts] perform a two-step analysis, first examining

6

whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotations omitted). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Plummer v. Wexford Health Sources, Inc.*, 609 F. App'x 861, 862 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments").

"A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (internal quotation omitted). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

### B. Analysis

Dr. Sims and Ms. Clarke argue that Mr. Lintz cannot show that he has a serious medical need because the evidence does not support a reasonable conclusion that he has bipolar disorder. Dkt. 29 at 8-9. They also argue that their treatment decisions were informed by their professional

judgment and that Mr. Lintz cannot prove an Eighth Amendment violation simply by disagreeing with his providers' diagnosis and treatment. *Id.* at 10-11.

In his response, Mr. Lintz persists in his claim that he has bipolar disorder and argues that Dr. Sims and Ms. Clarke were deliberately indifferent because they failed to provide him with a meaningful evaluation and failed to retrieve his adolescent psychiatric records, which would have shown that he was diagnosed with bipolar disorder when he was twelve and received treatment until he was sixteen. Dkt. 32 at 1.[4]

Mr. Lintz has presented some evidence that his mental health issues may rise to the level of a serious medical need. He has some history of mental illness, including an adolescent bipolar diagnosis; he has displayed symptoms of an Axis II personality disorder at Wabash Valley; and he has a history of attempting suicide, including four suicide attempts at Wabash Valley. *See generally* dkt. 30-3; dkt. 30-4 at 9. Whether this evidence supports a reasonable conclusion that his mental health issues amounted to a serious medical need for purposes of the Eighth Amendment is a comparatively difficult question. The Court will assume that it does and grant summary judgment because the evidence does not support a reasonable conclusion that Dr. Sims or Ms. Clarke were deliberately indifferent to Mr. Lintz's mental health needs.

Ms. Clarke met with Mr. Lintz several times in response to his Request for Health Care forms. *See generally* dkt. 30-2. She completed medical records describing his symptoms and demeanor and provided him with information about talk therapy and emotional intelligence. *See generally* dkt. 30-3. On multiple occasions, Mr. Lintz did not engage with the materials or suggestions that Ms. Clarke provided because he did not believe they were beneficial. *E.g.*, dkt. 30-

---

[4] After the defendants filed a reply in support of summary judgment and the motion was fully briefed, Mr. Lintz attempted to file an amended response. *See* dkt. 34. The Court did not grant Mr. Lintz leave to file an amended response and will consider the original response only in ruling on the motion for summary judgment. *See* dkt. 32.

8

3 at 7 (refused medical referral) and 13-14 (refused to engage in dialectical behavior therapy). Ms. Clarke also met with Mr. Lintz to provide counseling each time he was monitored following a suicide attempt. *Id.* at 1-4; dkt. 30-4 at 9.

As a mental health counselor, Ms. Clarke had no authority to diagnose Mr. Lintz with bipolar disorder or treat him for bipolar disorder without a bipolar diagnosis from a psychologist or psychiatrist. Dkt. 30-2 at ¶ 12. Further, she did not identify his symptoms as being indicative of bipolar disorder, and the evidence does not support a reasonable conclusion that her failure to recommend additional evaluations from Dr. Sims or another psychologist or a psychiatrist reflects deliberate indifference or a lack of professional medical judgment. Dkt. 30-2 at ¶¶ 6, 8; dkt. 30-3 at 13-14, 17, 19.

Dr. Sims met with Mr. Lintz during his hunger strike. Dkt. 30-1 at ¶ 6; dkt. 30-3 at 15. She believed that it would not have been appropriate to treat Mr. Lintz for bipolar disorder based on an adolescent bipolar diagnosis that was more than ten years old. *Id.* She also did not believe that his symptoms were consistent with a bipolar diagnosis. Dkt. 30-2 at ¶ 9. The evidence does not support a reasonable conclusion that Dr. Sims' failure to diagnosis Mr. Lintz with bipolar disorder reflects deliberate indifference or a lack of professional medical judgment. *See Norfleet*, 439 F.3d at 396 ("To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.").

Mr. Lintz argues that Dr. Sims should have requested his adolescent psychiatric records, but there is no evidence that these records still exist. Mr. Lintz has not shown that his belief in the existence of these records arises from personal knowledge; instead, his belief may be based on unsupported speculation or inadmissible hearsay from his mother. *See* dkt. 30-4 at 13 ("my mom

9

has already lost the records, but she's my power of attorney, and she can go to Michigan and get my records. It's all court—it's all court public documents"). Mr. Lintz could have, potentially, sought a subpoena duces tecum to obtain these records to prove that they still exist and may have impacted Dr. Sims' treatment decisions, but he failed to obtain these records during discovery or submit them as evidence in opposition to the motion for summary judgment.

Mr. Lintz argues that Dr. Sims and Ms. Clarke took no action after he submitted Release of Medical Information forms authorizing his adolescent medical provider to release his psychiatric records to the mental health staff at Wabash Valley. Dkt. 32 at 1. Again, there is no admissible evidence to support this assertion. Mr. Lintz could have served the defendants with interrogatories asking what action they took after he submitted his Release of Medical Information forms, *see* Fed. R. Civ. P. 33, but no such interrogatories appear in the record, and it is unknown whether the defendants attempted to request Mr. Lintz's adolescent psychiatric records during the course of treating Mr. Lintz.

Because Mr. Lintz failed to submit his adolescent psychiatric records into evidence or provide evidence about what action the defendants took with respect to those records, he has failed to create a genuine dispute of material fact sufficient to defeat the motion for summary judgment. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, (7th Cir. 2021) ("Summary judgment is the moment in a lawsuit when a party must show what evidence it has that would convince a trier of fact to accept its version of events") (cleaned up)).

Even if these records still exist and the defendants failed to obtain them, there is no evidence that Mr. Lintz suffers from bipolar disorder today. He has not been diagnosed with bipolar disorder as an adult, and his need to be treated for bipolar disorder would not be obvious to a layperson. *See Pyles*, 771 F.3d at 409 (a prisoner may prove he has an illness by showing that

10

he has received a diagnosis from a physician or that the illness would be obvious to a layperson). As explained above, Dr. Sims' refusal to treat Mr. Lintz for bipolar disorder based solely on an adolescent bipolar diagnosis is a matter of professional medical judgment. Dr. Sims' medical judgment is entitled to deference, and the evidence does not support a reasonable finding of deliberate indifference.

## IV. Conclusion

The evidence would not allow a reasonable jury to enter a verdict for Mr. Lintz. The defendants' motion for summary judgment, dkt. [28], is **GRANTED**. This lawsuit is now **DISMISSED**. Final judgment in accordance with this Order shall now issue.

**IT IS SO ORDERED**.

Date: 03/09/2023

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DAKOTA LINTZ
261904
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

All Electronically Registered Counsel